1  Michele J. Beilke (State Bar No. 194098)
   mbeilke@huntonAK.com
2  Julia Y. Trankiem (State Bar No. 228666)
   jtrankiem@huntonAK.com
3  HUNTON ANDREWS KURTH LLP
   550 South Hope Street, Suite 2000
4  Los Angeles, California 90071-2627
   Telephone:  213.532.2000
5  Facsimile:   213.532.2020

6  *Attorney for Defendants*
   ABBOTT LABORATORIES, ST. JUDE
7  MEDICAL S.C., INC., and ST. JUDE
   MEDICAL, LLC (erroneously sued as ST.
8  JUDE MEDICAL, INC.)

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11

12 KIP THENO,                          Case No.  2:20-CV-04765

13              Plaintiff,             [Removal from Los Angeles County
                                       Superior Court Case No. 20STCV08597]
14         v.
                                       **NOTICE OF REMOVAL OF CIVIL
15 ABBOTT LABORATORIES, an Illinois    ACTION TO FEDERAL COURT
   corporation; ST. JUDE MEDICAL S.C., UNDER 28 U.S.C. §§ 1332 AND 1441**
16 INC., a Minnesota corporation; ST. JUDE
   MEDICAL, INC., a Minnesota           [Diversity]
17 corporation; FRANK FERNANDEZ, an
   individual; KEITH BOETTIGER, an      [*Filed Concurrently with Civil Cover
18 individual; JESSICA CLINE, an        Sheet; Corporate Disclosure Statement
   individual; and DOES 1 through 50,   and Notice of Interested Parties; Notice of
19 inclusive,                           Related Cases; and Declarations of
                                        Jessica Paik and Beth Radtke*]
20              Defendants.
                                        Complaint Filed: February 28, 2020
21

22

23

24

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants ABBOTT LABORATORIES, ST. JUDE MEDICAL S.C., INC., and ST. JUDE MEDICAL LLC (erroneously sued as ST. JUDE MEDICAL, INC.) (together, "Abbott") hereby remove the action filed by Plaintiff KIP THENO ("Plaintiff") in the Superior Court of the State of California for the County of Los Angeles, Case No. 20STCV08597, to the United States District Court for the Central District of California – Western Division.

## JURISDICTION AND VENUE

1.      Abbott asserts that this is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C. § 1441 in that it is a civil action between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a); 1446(a).

## PROCEDURAL BACKGROUND

3.      On February 28, 2020, Plaintiff Kip Theno filed an action against Abbott in the Superior Court for the State of California, County of Los Angeles, as Case No. 20STCV08597, *Kip Theno v. Abbott Laboratories et al.* (the "State Court Action").

4.      On April 29, 2020, Plaintiff served the registered agent for service of process of Abbott with copies of the Summons and Complaint.

5.      True and correct copies of these documents, including the service transmittal pages for Abbott, are attached to this Notice as **Exhibit A**.  **Exhibit A** constitutes all process, pleadings and orders served on Abbott in the State Court Action.

1   6.   On May 28, 2020, Abbott filed and served an Answer to the Complaint in

2   State Court.  A true and correct copy of Abbott's Answer is attached to this Notice as

3   **Exhibit B**.

4   7.   On May 27, 2020, individual defendant Jessica Cline was served with a

5   Summons and Complaint.[1]

6   8.   As of the date of this Removal, individual defendants Frank Fernandez and

7   Keith Boettiger (together, with Cline, "Individual Defendants") have not been served

8   with a Summons and Complaint.[2]

9   9.   Pursuant to 28 U.S.C. § 1446(b), this removal is timely because Abbott

10  filed this removal within 30 days of the date that Abbott was served with the Summons

11  and Complaint in the State Court Action.

12  <u>**COMPLETE DIVERSITY OF CITIZENSHIP EXISTS**</u>

13  10.   The parties are completely diverse in this matter because Plaintiff is a

14  citizen of California and Abbott is exclusively a citizen of Illinois and Minnesota for

15  purposes of removal.  Individual Defendants Fernandez and Boettiger are citizens of

16  Florida and Texas, respectively.  As explained in detail below, Cline is not a proper

17  party to this Action and her citizenship should, therefore, be disregarded for purposes of

18  diversity.

19  11.   **Plaintiff's Citizenship**.  For diversity purposes, a person is a "citizen" of

20  the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d

21  1088, 1090 (9th Cir. 1983).  A person's domicile is the place he or she resides with the

22

23  ─────────────

[1]  Cline joins in the removal of this lawsuit and intends on filing a motion to dismiss

24  the claims against her.

[2]  Neither Fernandez nor Boettiger need join in the removal of this lawsuit because

25  they have not been served with process. *See Salveson v. W. States Bankcard Ass'n*,
    731 F.2d 1423, 1429 (9th Cir. 1984) ("[A] party not served need not be joined; the

26  defendants summonsed can remove by themselves").  To the extent that Plaintiff
    (erroneously) argues that Abbott has accepted service on behalf of Fernandez and

27  Boettiger, Fernandez and Boettiger join in the removal of this lawsuit.  At the
    appropriate time, Fernandez and Boettiger intend on filing a motion to dismiss the

28  claims against them, including for lack of personal jurisdiction.

─ 2 ─

1   intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert*
2   *Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

3     12. As set forth in the Complaint, Plaintiff "is an individual residing in Los
4   Angeles County, California." Complaint at ¶ 1. As such, Plaintiff is domiciled in, and
5   for purposes of diversity jurisdiction is a citizen of, the State of California (and, more
6   specifically, Los Angeles County).

7     13. **Corporate Citizenship**. Pursuant to 28 U.S.C. § 1332(c)(1), "a
8   corporation shall be deemed to be a citizen of any State by which it has been
9   incorporated and of the State where it has its principal place of business."

10     14. A corporation's principal place of business is determined under the "nerve
11   center" test. *See Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010). Under this test, the
12   principal place of business is the state where "a corporation's officers direct, control,
13   and coordinate the corporation's activities." *Id.* A corporation's nerve center is a
14   "single place" and "should normally be the place where the corporation maintains its
15   headquarters." *Id.* at 93. Relevant factors include where executives reside and maintain
16   offices, where administrative and financial offices are located, where the board of
17   directors meets, and where day-to-day control over the company is executed. *See, e.g.,*
18   *Tomblin v. XLNT Veterinary Care, Inc.,* 2010 WL 2757311, at *4 (S.D. Cal. 2010).

19     15. Abbott is now, and was at the time this action was commenced, a citizen
20   of the State of Illinois within the meaning of 28 U.S.C. § 1332. More specifically,
21   Abbott Laboratories is, and has been at all times since February 28, 2020, incorporated
22   in the State of Illinois with its principal place of business in Illinois. Compl. ¶ 2.

23     16. St. Jude Medical S.C., Inc. is now, and was at the time this action was
24   commenced, a citizen of the State of Minnesota within the meaning of 28 U.S.C. §
25   1332. More specifically, St. Jude Medical S.C., Inc. is, and has been at all times since
26   February 28, 2020, incorporated in the State of Minnesota with its principal place of
27   business in Minnesota. Compl. ¶ 4.

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

17.     St. Jude Medical, Inc. no longer exists; St. Jude Medical, Inc. became St. Jude Medical, LLC (a limited-liability company organized under the laws of the State of Delaware) prior to the filing of this action.  Declaration of Jessica Paik ("Paik Decl.") ¶¶ 3-6.  St. Jude Medical, LLC is now, and was at the time this action was commenced, a citizen of the state of Illinois.  *See Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) ("like a partnership, an LLC is a citizen of every state of which its owners/members are citizens").  The only owner/member of St. Jude Medical, LLC is Abbott Laboratories, which is incorporated and has its principal place of business in Illinois (its corporate headquarters is located in Abbott Park, Illinois).  Paik Decl. ¶ 6.

18.     Accordingly, Abbott is a citizen of the States of Illinois and Minnesota, and not a citizen of the State of California.

19.     **Citizenship of Defendants Fernandez and Boettiger.**  As set forth in the Complaint, Individual Defendant Fernandez "is an individual residing in Miami, Florida."  Complaint at ¶ 5. As such, Fernandez is domiciled in, and for purposes of diversity jurisdiction is a citizen of, the State of Florida.

20.     As set forth in the Complaint, Individual Defendant Boettiger "is an individual residing in Austin, Texas."  Complaint at ¶ 6. As such, Boettiger is domiciled in, and for purposes of diversity jurisdiction is a citizen of, the State of Texas.

21.     **Defendant Cline's Citizenship Should be Disregarded**.[3]  Individual Defendant Cline (the only non-diverse defendant) is not a proper party to this lawsuit.[4] For purposes of diversity, her citizenship therefore should be disregarded.  A non-diverse party named in the state court action may be disregarded if the federal court determines that the party's joinder is a "sham" or "fraudulent" so that the plaintiff can

---

[3] The Complaint alleges that Cline resides in Los Angeles, California.  Compl. ¶ 7. Notably, Cline lived and worked in Austin, Texas, for the majority of Plaintiff's employment.  Cline began working in California on September 30, 2019, and Plaintiff's last day of work was October 11, 2019.  Therefore, she worked in California with Plaintiff for, at most, only 12 days.

[4] Cline intends on filing a motion to dismiss the claims against her.

state no cause of action against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, joinder of the resident defendant is fraudulent").

22.     In determining whether a defendant is "fraudulently" joined, courts may properly consider the allegations in the Complaint as well as facts presented by the defendant in its notice of removal.  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

23.     Here, Plaintiff's only claims against the Individual Defendants are the Fifth Cause of Action for intentional infliction of emotional distress ("IIED") and the Sixth Cause of Action for defamation.

24.     The allegations in the Complaint confirm that no cause of action may properly be maintained against any Individual Defendant, including Cline, however the analysis below is limited to Cline since she is the only non-diverse defendant.

25.     In the Complaint, Plaintiff names Cline only a handful of times and makes three principal allegations:

- "Defendants CLINE and BOETTIGER told Employer Defendants' employees that Plaintiff was not competent in his performance and actively campaigned to discredit him with his own sales team and other employees." Compl. ¶ 27.
- "Once Defendant CLINE started working for Plaintiff [after September 2019] it became clear that she was gathering information regarding Plaintiff and providing it to Defendant BOETTIGER. This included, but was not limited to, her repeatedly discussing the [Performance Improvement Plan ("PIP")] with Plaintiff and asking Plaintiff why he was in contact with [the Employee Relations Department ("ERD")]." Compl. ¶ 38.

- "Beginning in or about the summer of 2019, and continuing up to the present. Plaintiff is informed and believes, and based thereon alleges, that Defendants BOETTIGER, CLINE and FERNANDEZ spoke the following words of and concerning Plaintiff without believing them to be true: (1) that Plaintiff was performing poorly with the Employer Defendants, (2) that Plaintiff was insubordinate and incompetent at work, and (3) that Plaintiff, in his professional capacity, cannot be trusted." Compl. ¶ 51.

26.   As a threshold matter, Plaintiff cannot state a cause of action against Cline, under California law, for IIED or defamation because California law does not apply to conduct that occurred outside of California.

27.   California law contains a presumption against extraterritorial application of its statutes.[5]  *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 897 (C.D. Cal. 2009) (citing *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)). The presumption applies unless the statute indicates otherwise.  *Id.*  Similarly, with respect to common law claims, there are "limits on the extraterritorial application of California law."  *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015); see also *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *7 (N.D. Cal. Apr. 24, 2017) (dismissing common law claim without leave to amend because court would "not presume that the California common law is meant to have extraterritorial effect").

28.   In *Russo*, the court declined to apply California law to statutory and common law claims notwithstanding that the plaintiff was a California resident who signed an employment agreement in California, since the conduct giving rise to the

---

[5] The Complaint alleges defamation without citation to any statute. To the extent that Plaintiff's claim is one for defamation under California Civil Code §§ 45–46, the analysis regarding extraterritoriality is the same as that under the common law. *Somers v. Digital Realty Tr. Inc.*, No. 14-CV-05180-EMC, 2018 WL 3730469, at *5 (N.D. Cal. Aug. 6, 2018) ("Courts apply the same analysis to common law claims").

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

liability occurred outside of California.  *Russo,* 135 F. Supp. 3d at 1096.  The court explained that, "[u]nder California law, the relevant inquiry for whether state law should be applied extraterritorially is not the location of employment…, but rather whether 'the conduct which gives rise to liability… occurs in California.'"  *Id.* (quoting *Diamond Multimedia Sys., Inc. v. Superior Court,* 19 Cal.4th 1036, 1059 (1999)).  *See also Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) ("[I]f the liability-creating conduct occurs outside of California, California law generally should not govern that conduct…"); *Gonzalez v. ITT Corp.*, No. CV 09-3400 SVW (SHX), 2009 WL 10700307, at **5–6 (C.D. Cal. Aug. 10, 2009) (quotations omitted) (concluding that the employee's residency is not central to the question of whether FEHA should apply to extraterritorial claims; "The determining factor is not…whether the employee is a California resident.").

29.     Moreover, courts have dismissed claims where a complaint fails to allege the location of the conduct giving rise to liability.  *See, e.g., MacKinnon v. Logitech Inc.*, No. 15-CV-05231-TEH, 2016 WL 2897661, at *2 (N.D. Cal. May 18, 2016) (dismissing the plaintiff employee's claims for failure to allege tortious conduct in California, where plaintiff failed to allege "who was responsible for the decision to fire him, where those responsible individuals were located, and where [the plaintiff] was located when he was allegedly discriminated against"); *Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) ("While the FAC appears to assert that the corporate officers named in the allegations ratified or participated in the challenged conduct, it only implies that they were employed in California and does not identify what actions, if any, they took in California"); *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019) (finding UCL plaintiff did not overcome the presumption against extraterritoriality where the complaint failed to allege key factors).

30.     As in those cases, Plaintiff here does not allege that any of the conduct ascribed to Cline in the Complaint took place in California.  In fact, Cline lived and

worked in Austin, Texas, for nearly all of Plaintiff's employment.  Cline only began working in California on September 30, 2019, and Plaintiff's last day of work was October 11, 2019.  Cline, therefore, worked in California with Plaintiff for, at most, 12 days.  It is insufficient, under *Russo* and related authorities, that Plaintiff lived and worked in California where the alleged conduct occurred outside of California.  Since Plaintiff has failed to allege the conduct giving rise to Cline's liability occurred in California, Plaintiff cannot state any cause of action against Cline, under California law.

### (a)  Intentional Infliction of Emotional Distress Claim

31.  Even if California law applied (and it does not), Plaintiff's IIED claim fails for several reasons: (1) the allegations against Cline do not rise to the requisite level of "extreme and outrageous" to warrant liability for IIED; (2) the claim is barred by the managerial privilege doctrine; and (3) the claim is also preempted by the California Workers' Compensation Act.

32.  To establish a cause of action for IIED, Plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (quotations omitted).  Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).  Moreover, retaliatory motive alone is insufficient to sustain a claim for intentional infliction of emotional distress.  *Light v. Department of Parks & Recreation*, 14 Cal. App. 5th 75, 102 (2017) (citing *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996)).

33.  In examining the claim against Cline, the court must look at Cline's individual conduct distinct from the conduct of the other Individual Defendants.  *Light*,

14 Cal. App. 5th at 102.  In the employment context, individual actions **not** rising to the level of extreme and outrageous conduct have included allegations by a severely obese plaintiff that her supervisor mocked her for her troubles getting a properly-sized uniform, asked her about weight-loss surgery, told her she did not need to eat something, and told the kitchen staff not to give her extra food.  *Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 940 (2017).  In *Light*, the allegations against the defendant supervisor included: refusing to listen to the plaintiff's complaints about retaliation; encouraging efforts to silence Plaintiff; and participating in the retaliation against her.  *Light*, 14 Cal. App. 5th at 102.  The court explained that, even if the defendant's actions contributed to the employer's unlawful retaliation against Plaintiff, such claims were insufficient for an IIED claim.  *Id.*  By contrast, in *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493 (1970), the plaintiff, who was African American, was able to demonstrate outrageous conduct where he was fired by a supervisor who cursed and shouted racial epithets at him.  *Id.* at 496–97.

34.  As in *Light* and *Cornell*, Plaintiff cannot establish that any of Cline's alleged actions were sufficiently "extreme and outrageous" to warrant liability for IIED.  Here, the allegations against Cline specifically are that she: gathered information about Plaintiff on behalf of another Defendant; asked about Plaintiff's PIP; asked why he was in contact with ERD; and made statements to discredit him with employees.  These actions are in no way akin to *Alcorn*, nor are the facts alleged even as extreme as those in *Light* and *Cornell*.  Cline was, at least at the outset, Boettiger's executive assistant "responsible for issuing orders from Defendant BOETTIGER to Employer Defendants employees." Compl. ¶ 7.  Her role in all of the causes of action alleged are peripheral at best.  Even if the Complaint could properly ascribe retaliatory actions or motives to Cline, such motives are insufficient, under *Janken* and *Light* to sustain an IIED claim.  Cline's actions simply do not rise to the level of extreme and outrageous conduct necessary to support an IIED claim.

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

35.     Instead, the allegations against Cline fall under the umbrella of managing personnel actions, in this instance, actions surrounding Plaintiff's discipline and ultimate termination. Courts have held that "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).  Additionally, discipline or termination of employment, without more, cannot give rise to liability for intentional infliction of emotional distress. *Buscemi v. McDonnell Douglas Corp*., 736 F.2d 1348, 1352 (9th Cir. 1984).

36.     Along those same lines, Plaintiff's claim for IIED is barred by the managerial privilege doctrine because Cline was acting within the scope of her employment when the alleged conduct occurred, as noted in the Complaint.  Compl. ¶ 11.  California law explicitly prohibits employees from suing their managers and supervisors for merely discharging their employment duties related to personnel actions.  *See Sheppard v. Freeman*, 67 Cal. App. 4th 339, 342 (1998); *see generally Reno v. Baird*, 18 Cal. 4th 640, 647 (1998).  An individual defendant also cannot be held liable for those same personnel decisions under a common law tort theory.  *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996); *Helgeson v. Am. Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) ("Performance reviews, counseling sessions, lay-off decisions, and work assignments are all decisions that businesses make every day… Even if these decisions were improperly motivated, they fall far short of the necessary standard of outrageous conduct beyond all bounds of decency.").

37.     All of the actions that Cline allegedly took against Plaintiff relate to personnel decisions, as all of Plaintiff's claims arise out of his performance management or his termination. The allegations in the Complaint support that Cline was merely acting within the scope of her employment in connection with Plaintiff's performance management and termination.  More specifically, Cline was "responsible for issuing orders" from Boettiger to Abbott employees (Compl. ¶ 7), and Boettiger supervised Plaintiff's direct supervisor (Compl. ¶¶ 5-6). Carrying out orders related to

– 10 –

1  personnel actions falls squarely within the managerial privilege doctrine and, even
2  where such personnel actions are ultimately determined to be improperly motivated,
3  such conduct does not state a claim for IIED, under *Helgeson* and *Janken.*

4      38.    Plaintiff's claim for IIED against Cline is also preempted by the California
5  Workers' Compensation Act. The California Workers' Compensation Act, as codified
6  in Labor Code section 3200 *et. seq.*, provides a detailed and comprehensive system of
7  remedies for work related injuries that are the "sole and exclusive remedy" for such
8  injuries and are available only in proceedings before the Workers' Compensation
9  Appeals Board. *See* Lab. Code §§ 3602(a), 5300.  Subject to only limited exceptions,
10 none of which are relevant here, workers' compensation is the only remedy available to
11 injured employees against the employer responsible for injuries "arising out of and in
12 the course of employment." Lab. Code §§ 3600-3602, 5300; *Shoemaker v. Myers,* 52
13 Cal. 3d. 1, 18, 25 (1990). Workers' compensation is generally the exclusive remedy for
14 disabling injuries, whether physical or mental, arising from employment or termination
15 of employment. See *Shoemaker,* 52 Cal.3d. at 16. This includes all injuries, whether
16 physical or mental, that are collateral to or derivative of an injury compensable under
17 the California Workers' Compensation Act. *Charles J. Vacanti, M.D., Inc. v. State*
18 *Comp. Ins. Fund*, 24 Cal. 4th 800, 814-15 (2001).

19     39.    The California Supreme Court has held that claims for IIED related to an
20 employee's discipline or termination, are barred by the exclusive remedy provisions of
21 the Workers' Compensation Act.  *Miklosy v. The Regents of the Univ. of Cal*., 44 Cal.
22 4th 876, 902-03 (2008) (Workers' Compensation Act preempted plaintiff employees'
23 claims for IIED allegedly suffered as a result of whistleblower retaliation); *Vacanti*, 24
24 Cal. 4th at 814-815 (emotional distress allegedly caused by employer's abusive conduct
25 during termination process held "collateral to or derivative of a compensable workplace
26 injury"); *Cole v. Fair Oaks Fire Protection Dist*., 43 Cal. 3d 148, 160 (1987) (claims
27 are barred by the Workers' Compensation Act "when the misconduct attributed to the
28 employer is actions which are a normal part of the employment relationship, such as

demotions, promotions, criticism of work practices").  An employee cannot "avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance." *Cole*, 43 Cal. 3d at 160.

40.    Here, Plaintiff's IIED claim is preempted because the alleged misconduct upon which he apparently bases his claim are all part of his employment relationship with Abbott – and certainly not related to any relationship with, or conduct by, Cline that was outside the course and scope of her duties.

**(b)    Defamation**

41.    Plaintiff's defamation claim is similarly deficient, even assuming California law applies (and it does not).  The Complaint identifies only impermissibly vague and general statements that, on their face, are non-actionable statements of opinion and also privileged.

42.    As a threshold matter, the allegedly defamatory statements that Plaintiff attributes to Cline are not specifically identified, as required under state law.[6] In California, "although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (rejecting as insufficient plaintiff's allegation that he was falsely accused of acting inappropriately toward a female parole agent on a specified date). *Id.* at 1215-16.  *See also Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) ("While the exact words or circumstances of the slander need not be alleged to state a claim for defamation, the substance of the defamatory statement must be alleged")  In *Qualls v. Regents of Univ. of California*, No. 1:13-CV-00649-LJO, 2013 WL 4828587 (E.D. Cal. Sept. 6, 2013),

---

[6] In ruling on the sufficiency of a state law claim, courts apply federal law pleading standards, although the standard for dismissal in state court "is highly relevant." *Church of Scientology of Calif. v. Flynn*, 744 F.2d 694, 696 n.2 (9th Cir. 1984)

1    the court rejected, as insufficient, allegations of "poor performance," "dishonesty," and

2    "insubordination." *Id.* at * 8.  The court explained that, "the defamation claim fails to

3    allege more than the 'mere possibility of misconduct.'" *Id.*

4          43.    Similarly, here Plaintiff alleges only that Cline and another Individual

5    Defendant told unspecified "employees" that Plaintiff was not competent in his

6    performance (Compl. ¶ 27), and that Cline and the other Defendants (without quoting

7    any of them), "spoke the following words of and concerning Plaintiff without believing

8    them to be true: (1) that Plaintiff was performing poorly with the Employer Defendants,

9    (2) that Plaintiff was insubordinate and incompetent at work, and (3) that Plaintiff, in

10   his professional capacity, cannot be trusted." Compl. ¶ 87.  Such allegations, similar to

11   those outlined in *Qualls* and *Jacobson*, do not specifically identify the allegedly

12   defamatory statements and are, therefore, insufficient to state a claim against Cline.

13         44.    Moreover, such statements are subjective opinion and, as such, are not

14   actionable.  To be defamatory, a publication "must contain a false statement of fact."

15   *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 600 (1976).  A statement of

16   opinion "cannot be false and is outside the meaning of libel."  *Jensen v. Hewlett-*

17   *Packard Co.*, 14 Cal. App. 4th 958, 970 (1993).  *See also Ziv v. Valley Beth Shalom*,

18   156 F.3d 1242 (9th Cir. 1998) (same).  A statement of opinion may be actionable, but

19   only "if it implies the allegation of undisclosed defamatory facts as the basis for the

20   opinion," *Okun v. Superior Court*, 29 Cal. 3d 442, 451–452 (1981).

21         45.    Statements identical to those attributed to Cline have been held to be

22   opinions, outside the meaning of libel, and not statements of fact.  *See Gould v.*

23   *Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153–54 (1995) ("Here, the

24   statement by Gould's supervisor accusing Gould of "poor performance" is clearly a

25   statement of opinion."); *Qualls*, No. 1:13-CV-00649-LJO, 2013 WL 4828587, at *8

26   (rejecting allegations of "poor performance," "dishonesty," and "insubordination.").

27         46.    Similarly, the statements that Theno was "incompetent at work," and "not

28   competent in his performance," as alleged in the Complaint, are subjective statements

that do not imply the allegation of any undisclosed facts.  In *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97 (2007), the court explained that "[b]ecause [the defendant's] statement contain[ed] no hint of what conduct she believed [the plaintiff] had engaged in that would be immoral, her statement [a general assertion of "immoral behavior"] neither contained nor implied a provably false assertion of fact, but at most implied an opinion." *Id.* at 117.  As also explained by the court in *Kahn v. Bower*, "[t]he real question is whether this premise—that plaintiff was "incompetent"—is susceptible of an interpretation which makes it "provably false." The assertion may, on its face, approach the outer limits of vagueness and subjectivity." 232 Cal. App. 3d 1599, 1609 (1991). The court in *Kahn* examined the context of the statement to determine whether it was "reasonably susceptible of a provably false meaning." *Id.*  Similarly, in *Gill v. Hughes*, 227 Cal. App. 3d 1299 (1991) the court determined that "[t]he statement that plaintiff 'is an incompetent surgeon and needs more training' implies a knowledge of facts which lead to this conclusion and further is susceptible of being proved true or false." *Id.* at 1309.  *See also Banks v. Dominican Coll.*, 35 Cal. App. 4th 1545, 1554 (1995) (finding statements as to appellant's unsuitability for a teaching position were not actionable since such statements "contain opinions that [appellant is] not performing [her] duties competently.... The assertions ... relate directly to [her] fitness.... As such, they constitute protected statements of opinion.").

47.     Here, in sharp contrast to *Kahn* and *Gill*, it would be impossible to discern whether there is a false meaning that could be implied by the statements "not competent in his performance" and "incompetent at work."  Here, Plaintiff supplies absolutely no context – not the speaker's words, location or audience.  Under the circumstances, the statements alleged in the Complaint are merely subjective opinions, which are not actionable, as was the case in both *McGarry* and *Banks*.

48.     Finally, even if the allegedly defamatory statements that Plaintiff attributes to Cline were actionable statements of fact (and they are not), such statements are privileged, falling under the common interest doctrine, which protects communications

made without malice on subjects of mutual interest.  *See* California Civil Code § 47(c). The privilege, as explained by the court in *Deaile v. Gen. Tel. Co. of California*, 40 Cal. App. 3d 841 (1974) is one "where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest." *Id.* at 846.  In *Deaile*, everyone who heard the allegedly libelous statements concerning the plaintiff's forced retirement were employed by the defendant employer and the statements "were only disseminated in an effort to preserve employee morale and job efficiency." *Id.*  The court explained that "[u]nder these circumstances the recipients, as well as defendant, were 'interested' persons within the meaning of section 47, subdivision 3 of the Civil Code." *Id.*  Here, Plaintiff does not allege that the allegedly defamatory statements attributed to Cline were shared outside the company or published to anyone other than "employees" of the company.  Compl. ¶ 27. Such employees are interested persons, within the meaning of § 47, as explained in *Deaile*. Moreover, as in *Deaile*, the alleged statements pertained to the circumstances surrounding Plaintiff's termination, which would be of interest to employees of the company.  Nor are any claims of malice supported by the allegations in the Complaint. "A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him." *Robomatic, Inc., v. Vetco Offshore*, 225 Cal. App. 3d 270, 276 (1990).  Plaintiff also has not alleged any facts, much less specific facts, that would support actual malice by Cline in particular.  Under the circumstances, such statements are privileged.

49.    In summary, because the only causes of action asserted against Cline are for IIED and defamation, and because Plaintiff has failed to state a claim against Cline for any of these causes of action, Cline is a "sham defendant" whose citizenship must be disregarded for purposes of diversity jurisdiction.

50.    **Doe Defendants**.  Although Plaintiff has also named as defendants Does 1 through 50, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a); *see also Fristos*

– 15 –

1    *v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are

2    not required to join in a removal petition).  Thus, the existence of "Doe" defendants

3    does not deprive the Court of jurisdiction.

4         51.    In conclusion and as set forth above, complete diversity of citizenship

5    exists under 28 U.S.C. § 1332, and removal is proper in this case pursuant to 28 U.S.C.

6    § 1441.

7                          **AMOUNT IN CONTROVERSY**

8         52.    The Complaint alleges claims for: (1) retaliation in violation of California

9    Labor Code Section 1102.5; (2) wrongful termination in violation of public policy; (3)

10   Unfair Business Practices; (4) waiting time penalties; (5) IIED; and (6) defamation.

11   Plaintiff's prayer for relief includes "compensatory damages," "statutory penalties"

12   (including penalties under Labor Code Section 1102.5 and waiting time penalties),

13   "restitution," "mental and emotional distress damages," "reasonable attorneys' fees,"

14   and "punitive damages." *See* Compl. at Prayer.

15        53.    Plaintiff's Complaint does not specify the amount that he seeks to recover

16   from Defendants in this action. Where removal is based on diversity of citizenship and

17   the initial pleading seeks a money judgment but does not demand a specific sum, "the

18   notice of removal may assert the amount in controversy," 28 U.S.C. 1446(c)(2), and a

19   removing defendant "need include only a plausible allegation that the amount in

20   controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.*

21   *v. Owens*, 135 S. Ct. 547, 554, 574 U.S. 81 (2015).

22        54.    In measuring the amount in controversy, the Court must assume that the

23   allegations of the Complaint are true and that a jury will return a verdict in favor of the

24   plaintiff on all claims asserted in the Complaint.  *Kenneth Rothschild Trust v. Morgan*

25   *Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate inquiry

26   is the amount that is put "in controversy" by the Complaint, and not how much, if

27   anything, the defendant will actually owe.  *Rippee v. Boston Mkt. Corp.*, 408 F. Supp.

28   2d 982, 986 (S.D. Cal. 2005) (*citing Schere v. Equitable Life Assurance Soc'y of the*

1  *United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or

2  provable amount of damages is not what is considered in the removal analysis; rather, it

3  is the amount put in controversy by the plaintiff's complaint)). In determining the

4  amount in controversy, the Court may consider damages awards in similar cases.

5  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

6       55.    Although Abbott denies the validity and merit of all of Plaintiff's claims

7  and allegations and denies that Plaintiff is entitled to any relief, Plaintiff's claims

8  establish an amount "in controversy" in excess of the jurisdictional minimum of

9  $75,000, exclusive of interest and costs, as set forth below:

10       56.    **Lost Earnings**.  If Plaintiff prevails on his claims for retaliation and/or

11  wrongful termination, he potentially could recover the amount he would have earned up

12  through the date of trial, including any benefits or pay increases. *See Parker v.*

13  *Twentieth Century-Fox Film Corp.*, 3 Cal. 3d 176 (1970); *Wise v. S. Pac. Co.,* 1 Cal. 3d

14  600, 607 (1970).

15       57.    Based on Plaintiff's claims for lost earnings alone, it is more likely than

16  not that the amount in controversy exceeds $75,000, exclusive of interest and costs, as

17  required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff alleges that as

18  a consequence of Abbott's conduct, "Plaintiff has suffered and will continue to suffer

19  lost wages and other employment benefits, whereby Plaintiff is entitled to general

20  compensatory damages in amounts to be proven at trial, in addition to any other

21  remedies and damages allowed by law." Compl. ¶ 55.  At the time of his separation

22  from employment, Plaintiff's annual base salary was $177,187.50.  Declaration of Beth

23  Radtke ("Radtke Decl.") ¶ 3.  Therefore, Plaintiff's accrued lost wages to date, based on

24  Plaintiff's gross earnings for the period from his alleged termination on October 11,

25  2019 (Compl. ¶ 49) to the date of this removal (approximately 33 weeks) is

26  **$112,445.91**.  This is a conservative estimate, as lost wages will continue to accrue

27  through the date of trial.  This also excludes any other compensation such as

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1  commissions.  In any event, Plaintiff's claim for lost earnings alone is already well

2  above the $75,000.00 threshold.

3     58.  **Emotional Distress Damages**.  Plaintiff also alleges that he has suffered

4  "severe emotional distress, including but not limited to fright, nervousness, grief,

5  anxiety, worry, shock, humiliation, and indignity, as well as physical pain." and seeks

6  damages related to same.  *See, e.g.,* Compl. ¶ 83.  Plaintiff's potential recovery of such

7  damages further augments the foregoing amount and demonstrates that the

8  jurisdictional prerequisite for removal of this action is met. *See Gibson v. Chrysler*

9  *Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (holding that emotional distress damages are

10  included in determining amount in controversy).

11     59.  In *Kroske*, the Ninth Circuit found that the district court's conclusion that

12  the plaintiff's "emotional distress damages would add at least an additional $25,000 to

13  her claim" was not clearly erroneous, where she had only $55,000 in lost wages, thus

14  satisfying the amount in controversy requirement "even without including a potential

15  award of attorney's fees." 432 F.3d at 980. Based on the conservative estimate from

16  *Kroske*, Plaintiff's potential recovery of emotional distress damages could add at least

17  $25,000 to the amount in controversy.

18     60.  **Punitive (Exemplary) Damages**.  Plaintiff also seeks an award of

19  punitive damages.  *See*, *e.g.*, Compl. ¶ 57.  "In determining the amount in controversy,

20  the court must consider the amount of actual and punitive damages."  *Nasiri v. Allstate*

21  *Indem. Co.*, 41 Fed. Appx. 76, 77 (9th Cir. 2002); *see also Gibson v. Chrysler Corp.*,

22  261 F.3d 927, 945 (9th Cir. 2001) (stating that "[i]t is well established that punitive

23  damages are part of the amount in controversy in a civil action.").  A single-digit ratio

24  (i.e., no more than nine-to-one) is typically appropriate for an award of punitive

25  damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

26     61.  Jury verdicts in California cases involving factual allegations similar to

27  those here demonstrate that were Plaintiff to prove the allegations of the Complaint and

28

1  prevail at trial, his punitive damages could bring the amount in controversy to well over

2  the $75,000 threshold.

3        62.   **Total Amount in Controversy**.  Consequently, a preponderance of the

4  evidence demonstrates that the amount in controversy exceeds $75,000, exclusive of

5  interest and costs.  Plaintiff has put at least $112,445.91 in controversy with his claims

6  for lost wages alone.  Although no amount has been specified for Plaintiff's claims of

7  emotional distress damages or punitive damages, either of these claims, on its own,

8  could exceed $75,000, exclusive of interest and costs, in a retaliation and wrongful

9  termination lawsuit.  This also does not take into account the other relief Plaintiff seeks,

10  such as statutory penalties (under Labor Code Section 1102.5, the penalty is up to

11  $10,000), waiting time penalties (up to 30 days of daily wages), restitution, or

12  attorneys' fees.  Plaintiff's claims collectively make it facially plain that Plaintiff is

13  *seeking* far more than the minimum amount needed to meet the amount in controversy

14  requirement.  *See, e.g., Kroske v. U.S. Bank Corp*., 432 F.3d 976, 980 (9th Cir. 2005)

15  (finding, by preponderance of the evidence, that a complaint exceeded $75,000 where it

16  sought damages for lost wages, benefits, 401(k) contributions, value of life insurance

17  policies, stock options, emotional distress damages, and attorney's fees and costs).

18                                **NOTICE**

19        63.   As required by 28 U.S.C. § 1446(d), Abbott is providing written notice of

20  the filing of this Notice of Removal to Plaintiff, and is filing a copy of this Notice of

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

– 19 –

64.    Removal with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

**WHEREFORE**, Abbott hereby removes from Los Angeles County Superior Court Case No. 20STCV08597 to the United States District Court for the Central District of California – Western Division.

DATED:  May 28, 2020                    HUNTON ANDREWS KURTH LLP


By: */s/ Julia Y. Trankiem*
Julia Y. Trankiem
*Attorney for Defendants*
ABBOTT LABORATORIES, ST. JUDE
MEDICAL S.C., INC., and ST. JUDE
MEDICAL, LLC (erroneously sued as ST.
JUDE MEDICAL, INC.)

042596.0000031 EMF_US 80259463v4
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT