UNITED STATES DISTRICT COURT  **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4765-DMG (PVCx)** | Date | July 15, 2020 |
| Title | *Kip Theno v. Abbott Laboratories, et al.* | Page | 1 of 9 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFF'S MOTION TO REMAND [12] AND DEFENDANTS' MOTION TO DISMISS [10]**

This matter is before the Court on Plaintiff Kip Theno's Motion to Remand ("MTR") [Doc. # 12] and Defendant Jessica Cline's Motion to Dismiss ("MTD") [Doc. # 10]. Both motions are now fully briefed. Opp. [Doc. # 19]; Reply [Doc. # 21]; [Doc. ## 14, 22]. Because the Court **GRANTS** the MTR for the reasons discussed below, it **DENIES** Cline's MTD as moot.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2020, Plaintiff filed his Complaint in Los Angeles County Superior Court against Defendants Abbott Laboratories, St. Jude Medical S.C., Inc., St. Jude Medical, LLC (erroneously sued as St. Jude Medical, Inc.) (collectively, "Employer Defendants"), Frank Fernandez, Keith Boettiger, and Jessica Cline. Against Employer Defendants, Plaintiff alleges claims for: (1) retaliation in violation of California Labor Code section 1102.5, (2) wrongful termination in violation of public policy, (3) unfair business practices in violation of California Business and Professions Code section 17200 *et seq.*, (4) waiting time violations under California Labor Code section 203, (5) intentional infliction of emotional distress ("IIED"), and (6) defamation. *See* Compl. [Doc. # 1-1]. Against Defendants Fernandez, Boettiger, and Cline, Plaintiff asserts only IIED and defamation claims. *Id.*

Plaintiff "was responsible for directing, managing and overseeing . . . neuromodulation sales" as an Area Vice President ("AVP") for Employer Defendants. Compl. at ¶ 16. At all relevant times, Fernandez was his direct supervisor and Boettiger was Fernandez's supervisor. *Id.* at ¶ 6. In February 2019, Plaintiff was concerned that a new sales plan, ordered by Boettiger, violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by giving sales representatives access to patient information. *Id.* at ¶¶ 20–22. Plaintiff raised his concerns with Fernandez and initially refused to participate with the plan. *Id.* at ¶ 23. As a result, Plaintiff

UNITED STATES DISTRICT COURT   **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4765-DMG (PVCx)** | Date | July 15, 2020 |
| Title | ***Kip Theno v. Abbott Laboratories, et al.*** | Page | 2 of 9 |

alleges that Fernandez "immediately started a campaign of retaliation against Plaintiff." *Id.* at ¶ 25. Fernandez then placed Plaintiff on a Performance Improvement Plan ("PIP"). *Id.* at ¶ 29. When Fernandez refused to participate in the PIP plan, Plaintiff told Employer Defendants' Employee Relations Department ("ERD") that he believed "that he was being targeted by Defendant FERNANDEZ because of his complaints about the HIPAA violations." *Id.* at ¶¶ 33, 35. In September 2019, Plaintiff learned that Cline was being reassigned to serve as his Executive Assistant. *Id.* at ¶ 37. Cline had worked for Boettiger and "was known for being his 'right hand' woman." *Id.* Plaintiff alleges that while Cline was working for him, she was gathering information about the PIP and Plaintiff's contacts with ERD and reporting it to Boettiger. *Id.* at ¶ 38. Plaintiff alleges that Cline told others: "(1) that Plaintiff was performing poorly with the Employer Defendants, (2) that Plaintiff was insubordinate and incompetent at work, and (3) that Plaintiff, in his professional capacity, cannot be trusted." *Id.* at ¶ 51. In late September 2019, Plaintiff received another order from Boettiger and Fernandez that he believed was a compliance violation. *Id.* at ¶¶ 39–40. Plaintiff reported the situation to ERD and Human Resources. *Id.* at ¶¶ 41, 43. Plaintiff was terminated a week later. *Id.* at ¶ 49.

While Plaintiff's allegations against Cline are sparse, he expands on the facts underlying his causes of action in his declaration in support of his MTR. Plaintiff asserts that Employer Defendants assigned Cline to him in response to his complaints about the sales plan. Theno Decl. at ¶¶ 5–6 [Doc. # 12-1]. While they were working together, Plaintiff believes that Cline was "trying to dig up any 'dirt' possible" to report to Boettiger. *Id.* at ¶¶ 13, 17. Plaintiff alleges that when he asked her if someone had already been hired to replace him, Cline responded, "happily, that yes," there was already someone set to take over. *Id.* at ¶ 9. The next day, Cline said that she was wrong after speaking with Boettiger, who told her that there was no replacement. *Id.* at ¶ 10. Plaintiff alleges that "Cline's obvious and open communication with Mr. Boettiger, under the guise of my assistant[,] added up to more pressure and fear." *Id.* at ¶ 11. Plaintiff alleges that Cline once asked him if he was looking for a new job and that when he answered no, she suggested that he start looking. *Id.* at ¶ 13. Plaintiff also believes that Cline was telling his sales team that he was "untrustworthy and not competent to be the Area Vice President." *Id.* at ¶ 16. Plaintiff contends that Cline's actions caused him extreme distress and anxiety and made him "overwhelmed at the thought of losing his job." *Id.* at ¶ 19.

On May 28, 2020, the Employer Defendants removed the case to this Court, asserting diversity jurisdiction. *See* Notice of Removal [Doc. # 1]. Plaintiff filed the instant MTR on June 17, 2020. [Doc. # 12.]

## II.
## LEGAL STANDARD

Diversity jurisdiction under 28 U.S.C. section 1332 requires that the parties to a suit be of diverse citizenship. *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806)). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)). There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*)) (internal quotation marks omitted).

"[T]here is a general presumption against fraudulent joinder." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Yet, fraudulently joined defendants do not defeat removal on diversity grounds. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

When contesting removal, a plaintiff is limited to the allegations stated in his complaint. *See Ritchey*, 139 F.3d at 1318 (to determine whether joinder of a defendant is fraudulent, district courts must "look only to a plaintiff's pleadings to determine removability" and "will determine the 'existence of federal jurisdiction . . . solely by an examination of the plaintiff's case.'" (citations omitted)). A defendant opposing remand may introduce evidence beyond the pleadings to establish fraudulent joinder. *Id.* (citing *McCabe*, 811 F.2d at 1339). If there is even "a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018). To that end, "[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (citation and internal quotation

UNITED STATES DISTRICT COURT  **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.   **CV 20-4765-DMG (PVCx)**                         Date   July 15, 2020

Title   *Kip Theno v. Abbott Laboratories, et al.*                         Page   4 of 9

marks omitted); *see also Rangel v. Bridgestone Retail Operations., LLC*, 200 F. Supp. 3d 1024, 1033 (C.D. Cal. 2016) (same).

# III.
# DISCUSSION

Plaintiff asserts that the Court lacks subject matter jurisdiction under 28 U.S.C. section 1332 because the parties are not completely diverse. Although Plaintiff and Cline are California citizens, Employer Defendants contend that the Court should disregard Cline for diversity purposes because Plaintiff fraudulently joined her solely to avoid litigating in federal court. Employer Defendants argue that Cline's joinder is fraudulent because: (1) there is a presumption against extraterritorial application of California law, (2) Plaintiff cannot state a claim for IIED, and (3) Plaintiff cannot state a claim for defamation.

**A.     Presumption Against Extraterritorial Application**

Employer Defendants first argue that Plaintiff's claims against Cline must fail because he has not alleged that the tortious conduct occurred in California. Notice of Removal at ¶¶ 26–27. When conduct occurs outside of California, there is a presumption against extraterritorial application of California law unless otherwise provided by statute. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Employer Defendants primarily cite to *Russo v. APL Marine Services, Ltd*, where the court granted summary judgment in the defendant's favor because most of the conduct underlying the plaintiff's California-law employment claims occurred in international waters. 135 F. Supp. 3d 1089, 1093–94 (C.D. Cal. 2015) ("[T]he extraterritorial application of FEHA is determined by the situs of both employment and the material elements of the cause of action, as opposed to residence of the employee or the employer.").

Even though neither side disputes that Cline was located in California while she worked as Plaintiff's executive assistant, Employer Defendants assert that the Complaint is silent as to where Cline's allegedly tortious conduct occurred. MTR at 16, 20;[1] Theno Decl. at ¶ 4 (On "September 30, 2019, Ms. Cline began working as my assistant. It was in this role in California when Ms. Cline began to directly intimidate me and defame me."); Cline Decl. at ¶ 3 [Doc. # 19-1]; Notice of Removal at ¶ 30 ("Cline only began working in California on September 30, 2019, and Plaintiff's last day of work was October 11, 2019."); MTR at 16 ("[A]lmost all the allegations against Cline occurred while she was in California.").

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4765-DMG (PVCx)** | Date | July 15, 2020 |
| Title | ***Kip Theno v. Abbott Laboratories, et al.*** | Page | 5 of 9 |

While Plaintiff's contentions about Cline's geographical location appear in places other than his Complaint, they suggest that Plaintiff is prepared to amend his pleading to include these allegations if given the chance to do so.² Because the Court must remand an action when it appears that a plaintiff could possibly allege new facts to support his claims, Defendants' first argument is unpersuasive. *Padilla,* 697 F. Supp. 2d at 1159.

**B.**    **Plaintiff's IIED Claim**

Employer Defendants argue that Plaintiff cannot state a claim against Cline for IIED because: (1) Plaintiff's claim is preempted by the California Workers' Compensation Act ("WCA"), (2) Cline's conduct is barred by the managerial privilege doctrine, and (3) Cline's conduct was not extreme and outrageous.

       **1.**    **WCA Preemption**

The WCA provides that it shall be the exclusive remedy for claims of IIED based on actions taken within the context of the employment relationship. *Carlos v. Old Dominion Freight Line, Inc.*, 726 F. App'x 576, 579 (9th Cir. 2018); *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987); Cal. Lab. Code § 3600 *et seq.*; *see also Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1002 (2001) (stating that WCA preemption also provides immunity to co-employees). WCA preemption applies even when intentional actions within the employment relationship are "calculated to cause severe emotional disturbance." *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998).

Yet, "where the plaintiff has contended that the employer's conduct is outside the normal risks of the employment relation, claims for emotional distress are not preempted by [WCA]." *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013). Actions within the "normal part of the employment relationship" do not encompass all conduct that occurs on the job. *Id.* (citation omitted). California law permits a separate, non-WCA civil action "if the conduct of the employer has a 'questionable' relationship to the employment or where the employer steps out of his proper role." *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1181 (N.D. Cal. 2003) (quoting *Cole*, 43 Cal. 3d at 161). Courts have established "no bright line test in determining what behavior is part of the employment relationship . . . ." *Onelum*, 948 F.

---

² California courts employ a generous leave to amend standard that mirrors Federal Rule of Civil Procedure 15's liberal policy. *See Howard v. County of San Diego*, 184 Cal. App. 4th 1422, 1428 (2010) (stating that a California "court's discretion will usually be exercised liberally to permit amendment of the pleadings"). It is therefore highly likely that Plaintiff would receive at least one opportunity to amend his pleading in state court.

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4765-DMG (PVCx)** | Date | July 15, 2020 |
| Title | ***Kip Theno v. Abbott Laboratories, et al.*** | Page | 6 of 9 |

Supp. 2d at 1055 (quoting *Calero*, 271 F. Supp. 2d at 1181). Gauging whether an IIED claim arises from actions within the "normal part of the employment relationship," is a "heavily fact intensive" inquiry into "the nature of defendants' conduct and whether it is so far out of the normal risks of the employment relationship as to be beyond the reach of Workers' Compensation." *Calero*, 271 F. Supp. 2d at 1181. That analysis requires, however, that "district courts must resolve ambiguities in the controlling state law in favor of the non-removing party when evaluating fraudulent joinder." *Onelum*, 948 F. Supp. 2d at 1055 (citation omitted).

In the Complaint, Plaintiff alleges that Cline "actively campaigned to discredit him" and "was gathering information regarding Plaintiff and providing it to Defendant BOETTIGER." Compl. at ¶¶ 27, 38. As discussed above, Plaintiff also makes claims outside the Complaint about Cline's conduct and maintains that her actions were "outside the normal course of business." MTR at 26 (internal quotations omitted). Employer Defendants have therefore failed to establish that it would be impossible for Plaintiff to state a cause of action for IIED against Cline that survives WCA preemption. Again, even if the Complaint does not clearly define Cline's conduct, and does not plainly allege that her conduct exceeded the normal bounds of her work activities, the record before the Court is sufficient to show that he may be able to make such allegations if given the chance to do so. And it would be inappropriate at the pleading stage for the Court to undertake the "heavily fact intensive" inquiry into whether Cline's purported conduct falls within the WCA's purview or exceeds the boundaries of normal business conduct. Accordingly, the Court concludes that the WCA does not completely foreclose Plaintiff's IIED claim.

### 2. Managerial Privilege Doctrine

Employer Defendants next argue that Plaintiff's claims against Cline are barred by the managerial privilege doctrine. Notice of Removal at ¶¶ 31, 36–37. California's managerial privilege is intended to shield from liability managers who act within the scope of their employment to benefit their employers. *See Calero*, 271 F. Supp. 2d at 1179 ("Where a managerial employee is motivated by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged."). But Employer Defendants assert that the doctrine should apply to Cline's conduct because Plaintiff's claims arise out of his employment activities and termination and Cline was merely following Boettiger's orders. Notice of Removal at ¶¶ 36–37; Opp. at 18.

Employer Defendants cite to several cases to argue that the managerial privilege precludes a plaintiff from suing an individual defendant for making personnel decisions within the scope of her employment. Notice of Removal at ¶ 36. *See, e.g.*, *Sheppard v. Freeman*, 67

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4765-DMG (PVCx)** | Date | July 15, 2020 |
| Title | ***Kip Theno v. Abbott Laboratories, et al.*** | Page | 7 of 9 |

Cal. App. 4th 339 (1998); *Reno v. Baird*, 18 Cal. 4th 640 (1998); *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996); *Helgeson v. Am. Int'l Grp., Inc.*, 44 F. Supp. 2d 1091 (S.D. Cal. 1999); *Buscemi v. McDonnel Douglas Corp.*, 736 F.2d 1348 (9th Cir. 1984). Some of these cases are distinguishable. *See Helgeson,* 44 F. Supp. 2d at 1096 (ruling on summary judgment that the case's facts could not support an IIED claim, not that the managerial privilege barred the claim); *Buscemi,* 736 F.2d at 1352 (ruling that that the plaintiff's claim was "no more than a claim that [he] was fired without good cause," which is not the case here). And even if the holdings in *Janken* and *Reno*—which concerned California Fair Education and Housing Act claims unlike those at issue here—are applicable to this case, subsequent courts have held that conduct of an employer or one of its agents *can* give rise to an IIED claim if it goes beyond normal personnel management activity.[3] *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1074 (C.D. Cal. 2016) ("While termination is not alone sufficient to satisfy the standard for extreme and outrageous conduct, [w]here the behavior goes beyond the act of termination . . . the court [must] determine whether on the evidence severe emotional distress can be found." (internal citations and quotations omitted)); *Onelum*, 948 F. Supp. 2d at 1053 (same); *Calero*, 271 F. Supp. 2d at 1178 ("There is no authority for the proposition that someone in [a managerial] position may not be liable in tort for the intentional infliction of emotional distress providing all of the elements of that tort are satisfied."). Because, as discussed above, it would be possible for Plaintiff to allege new or different facts demonstrating that Cline's conduct went beyond the scope of her normal employment activities, the managerial privilege does not require that the Court retain jurisdiction over this action. Whether Cline's conduct *in fact* went beyond her normal work requirement is a question for the factfinder to be resolved at a later stage.

### 3. Extreme and Outrageous Conduct

Finally, Employer Defendants argue that Cline's actions, as alleged, do not rise to the level of extreme and outrageous conduct. Notice of Removal at ¶¶ 32–35. For conduct to be extreme and outrageous enough to support and IIED claim, it must "exceed all bounds of that usually tolerated in a civilized community." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (citation omitted). Employer Defendants contend that the short time period (two weeks) of Cline's assignment as Plaintiff's assistant and the lack of in-person interaction between Plaintiff and Cline prove that Cline's conduct could not have been extreme and outrageous. Opp. at 15–16. But Employer Defendants fail to cite any authority holding that a defendant may not intentionally inflict emotional distress in two weeks. Indeed, another case that Employer Defendants cite demonstrates that emotional distress can arise from a single interaction. *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493 (1970) (holding that plaintiff could demonstrate emotional

---

[3] As a more fundamental matter, courts have expressed doubts that the managerial privilege can apply to IIED claims at all. *Onelum*, 948 F. Supp. 2d at 1052–53; *Calero*, 71 F. Supp. 2d at 1179.

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4765-DMG (PVCx)** | Date | July 15, 2020 |
| Title | ***Kip Theno v. Abbott Laboratories, et al.*** | Page | 8 of 9 |

distress that arose from supervisor firing and shouting racial epithets at him). Moreover, defendants may commit torts without making in-person contact. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347, 1361 (2003) (noting that e-mail and phone communication can cause injury and may be the basis for tort actions).

Employer Defendants also argue that Cline's conduct was not as extreme as the conduct in other cases where employment-related IIED claims failed. Notice of Removal at ¶¶ 32–34 (citing *Light v. Cal. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75 (2017); *Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908 (2017)). Both *Light* and *Cornell*, however, were appeals from summary adjudication orders, and the courts found that the actions at issue were not extreme and outrageous only after conducting factual inquiries into a fully developed record. Here, is not the court's job when reviewing a motion to remand to conduct a "searching inquiry into the merits of the plaintiff's case." *See Grancare, LLC*, 889 F.3d at 548–49. Even assuming that Cline's conduct falls short of extreme or outrageous conduct as currently alleged, it may still be possible for Plaintiff to amend his Complaint to allege that Cline behaved in a manner that exceeded "the bounds of conduct tolerated by a decent society." *See Onelum*, 948 F. Supp. 2d at 1053; *Calero*, 271 F. Supp. 2d at 1178.

In sum, because Plaintiff will likely receive leave to amend his Complaint to allege new or different allegations against Cline, Employer Defendants have not shown that the WCA or managerial privilege conclusively forecloses Plaintiff's IIED claim. Nor have they shown that it would be impossible for Plaintiff to allege that Cline's actions were sufficiently extreme or outrageous to support an IIED claim.[4] Courts must grant motions to remand under such circumstances.

### IV.
### REQUEST FOR ATTORNEYS' FEES AND COSTS

Plaintiff seeks $10,437.50 in attorney's fees and costs pursuant to 28 U.S.C. section 1447(c). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A district court may award attorneys' fees under section 1447(c) only when defendants "lacked an objectively reasonable basis for seeking removal." *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit." *Lussier v. Dollar Tree Stores, Inc.*, 518 F. 3d 1062, 1065 (9th Cir. 2008); *Rangel,* 200 F. Supp. 3d at 1035 ("Absent unusual

---

[4] In light of the Court's ruling on Plaintiff's IIED claim, it need not discuss Plaintiff's defamation claim or Plaintiff's argument that Cline never properly consented to removal.

UNITED STATES DISTRICT COURT  JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **CV 20-4765-DMG (PVCx)**  Date  July 15, 2020

Title  *Kip Theno v. Abbott Laboratories, et al.*  Page  9 of 9

circumstances," a district court may award fees pursuant to 28 U.S.C. section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal.").

Although Employer Defendants have failed to show removal is proper here, their attempt to remove the action was not objectively unreasonable given Plaintiff's thin allegations against Cline in his Complaint. It would therefore be inappropriate to award attorneys' fees in this case.

## V.
## CONCLUSION

In light of the foregoing, Plaintiff's MTR is **GRANTED**, but his request for attorneys' fees and costs is **DENIED**. The case is hereby **REMANDED** to the Los Angeles County Superior Court. The Court **DENIES without prejudice as moot** Cline's MTD. [Doc. # 10.]

**IT IS SO ORDERED**.